IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Paul Mullins and Tyler Rue, | |
| *On behalf of themselves and those similarly situated*, | Case No. 1:20-cv-214 |
| Plaintiffs, | Judge Matthew W. McFarland |
| v. | Magistrate Judge Karen L. Litkovitz |
| Data Mgmt. Co., *et al.*, | |
| Defendants. | |

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

Plaintiffs Paul Mullins and Tyler Rue ask that the Court preliminarily approve the parties' Settlement Agreement attached as Exhibit 1. The proposed Settlement Agreement resolves the collective/class-wide claims raised in this lawsuit. The parties request that the Court:

(1) Preliminarily approve the proposed settlement;

(2) Approve the content, form, and distribution of the class notice and claim form;

(3) Preliminarily approve the service award for each Plaintiff;

(4) Provisionally approve Class Counsel's request for attorneys' fees and costs; and

(5) Schedule a formal fairness hearing approximately 160 days after preliminary approval.

Respectfully submitted,


*/s/ Phil Krzeski*
Andrew R. Biller (0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

Memorandum in Support of Plaintiffs' Unopposed Motion to
Preliminarily Approve Settlement

## 1. Introduction

The parties have reached a settlement that would resolve all of the claims raised in this lawsuit. Plaintiffs now ask the Court for preliminary approval of the parties' Settlement Agreement, attached as Exhibit 1. [1]

## 2. Standard for Settlement Approval

Courts typically use a three-step procedure for approving settlements. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 WL 13202401, at *1 (S.D. Ohio Jan. 10, 2011). The Court first determines whether to preliminarily approve the settlement. *Id.* Second, notice of the settlement is sent to interested persons. *Id.* And third, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement and an Ohio and Kentucky law wage and hour settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

---

[1] The parties will submit an executed settlement agreement within seven days of the filing of the Unopposed Motion for Approval.

### 3. Background of the Lawsuit and Claims

Plaintiffs Paul Mullins and Tyler Rue delivered food for Defendants' LaRosa's franchise stores in southwest Ohio and northern Kentucky. On March 16, 2020, Plaintiff Mullins filed this lawsuit on behalf of himself and similarly situated delivery drivers in Ohio. *See* Doc. 1. On October 13, 2020, Plaintiff amended the Complaint to add Plaintiff Rue as a named Plaintiff, asserting claims on behalf of himself and similarly situated delivery drivers in Kentucky. *See* Doc. 35. The First Amended Complaint alleges several wage and hour violations.

First, Plaintiffs claim that Defendants under-reimbursed delivery drivers for the expenses that drivers incurred in being required to use their own cars to deliver food. Because Defendants paid the drivers at or below full minimum wage (*i.e.*, Defendants paid a tipped wage), any under-reimbursement could trigger a claim for unpaid minimum wages under the FLSA, Ohio, and Kentucky law.

Second, Plaintiffs assert that Defendants failed to properly take a tip credit under 29 U.S.C. § 203(m). Specifically, Defendants failed to actually pay the wage rate they promised to pay, after accounting for kickbacks, and therefore cannot avail themselves of the tip credit even if they properly informed Plaintiffs of it.

Third, Plaintiffs contend that they worked "dual jobs"—one tipped and one non-tipped—which entitled them to be paid full minimum wage under Ohio and Kentucky law for non-tipped work.

Fourth, Plaintiff Mullins brings a claim for additional, liquidated damages under Ohio's Prompt Pay Act Claim. Plaintiff's Prompt Pay Act claim can be contingent on an underlying wage and hour violation. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016).

Still, for Plaintiff to prevail on the liquidated damages claim (as opposed to just repayment of unpaid wages alone), he needs to show that there is no dispute regarding the underlying unpaid wages. O.R.C. 4113.15(B).

Fifth, Plaintiff Mullins contends that Ohio delivery drivers were paid their regular hourly rate, rather than time-and-a-half their regular hourly rate, for some overtime hours. Sixth, Plaintiff Mullins alleges civil liability for a criminal act under O.R.C. § 2307 on behalf of Ohio delivery drivers. And seventh, both Plaintiffs brought claims that Defendants were unjustly enriched stemming from Defendants' mileage under-reimbursement practices.

### 4. Summary of Settlement Terms

The settlement agreement creates a settlement fund of $900,000, inclusive of attorney's fees, expenses, and service awards. *See* Exhibit 1. Under the terms of the Agreement, unless they decide to opt out, each Ohio class member who worked for Defendants from March 16, 2017 to November 20, 2020, and each Kentucky class member who worked from Defendants from October 13, 2015 to November 20, 2020, will receive a share of the settlement fund. [2]

After subtracting fees, expenses, and service awards, the remaining settlement fund will be distributed based on hours worked and miles driven while under-reimbursed. First, Ohio class members' hours will be counted as 1.5 times their actual hours to account for the damages that are available to them under Ohio Constitution, Art. II, § 34a, and because these damages are not available to Kentucky delivery drivers. *See* Ex. 1, ¶ 3 (C)(ii)(a). Second, the settlement allocates

---

[2] There is one distinction to note regarding Kentucky delivery drivers at Defendants' Crescent Springs, Kentucky location. The data produced shows delivery drivers at the Crescent Spring location were reimbursed, on average, $.63 mile. For this reason, the Settlement Agreement does not release under-reimbursement claims on behalf of Crescent Springs' delivery drivers.

$100,000 to the delivery driver's "dual jobs" and "tip credit notice" claims, which will be prorated based on hours worked. *Id*. at ¶ 3(C)(ii)(b). Third, as to the reimbursement claim, Class Counsel will calculate the average reimbursement rate paid per mile using a four-week sampling of mileage data, and subtract that rate from an approximate IRS rate of $.55 per mile. *Id*. at ¶ 3(C)(ii)(c)(1). Fourth, the reimbursement portion will then be distributed per "reimbursement share." *Id*. at ¶ 3 (C)(ii)(c)(2). Specifically, Class Counsel will multiply each Class Member's numbers of hours worked at each store location and the calculated per mile under-reimbursement at each store location. *Id*. The reimbursement portion of the settlement will be then distributed to the Class Members pro-rata based on the reimbursement shares in proportion to the total reimbursement shares. *Id*. at ¶ 3 (C)(iii)(c)(5).

Upon preliminary approval, a Notice of Settlement (attached as Exhibit 2) will be distributed to the class members providing them with an opportunity to object or opt out before the Court considers whether to grant final approval. The Notice Period is 60 days.

As part of the settlement, Defendants agree not to oppose Plaintiffs' counsel's request for a fee award of 33.33% of the common fund, advanced expenses, the costs of settlement administration from the settlement fund, a $10,000 service award for Plaintiff Mullins, and a $5,000 service award for Plaintiff Rue.

**5. The settlement provides for a fair resolution of disputed claims.**

The most important factor to consider when evaluating a proposed settlement is Plaintiffs' probability of success on the merits. *Kritzer*, 2012 WL 1945144, at *6. To do that, Plaintiffs will describe the facts and law underlying their four primary claims.

### 5.1.    Under-reimbursement Claim

It is undisputed that food delivery companies must pay their minimum wage workers for expenses incurred as a result of the workers using their own cars for deliveries. The real dispute is over how much Defendants should have reimbursed.

Plaintiffs claim that Defendants have two options: (1) track and reimburse each drivers' actual expenses or (2) reimburse the drivers at the IRS standard business mileage rate. First Amended Complaint, Doc. 35, ¶¶ 237–242. *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043 (S.D. Ohio Nov. 5, 2019); *Brandenburg v. Cousin Vinny's Pizza*, No. 3:16-cv-516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019). Defendants disagree with Plaintiffs' allegations that they were required to reimburse at the IRS rate. Instead, Defendants argue that they are only required to "reasonably approximate" the drivers' incurred expenses for reimbursement. 29 C.F.R. § 778.217(a); FLSA 2020-12 (August 31, 2020).

Defendants reimbursed delivery drivers on a commission-based reimbursement methodology that ranged from 6.5-7.5% of the purchase order. Based on mileage data exchanged during discovery, Plaintiffs allege that Defendants reimbursed delivery drivers $.38 per mile. Defendants disagree with this calculation. Nonetheless, Plaintiffs estimate that the unpaid wages for this claim, if calculated at the IRS rate, are approximately $800,000. In addition, Plaintiffs would have sought an additional 1× unpaid wages as FLSA liquidated damages, an additional 2× unpaid wages as Ohio Constitution damages, and liquidated damages in the amount of 1× unpaid wages under the Kentucky Wage and Hour Act. *See* 29 U.S.C. § 260; Oh. Const., Art. II, § 34a; K.R.S. § 387.385.

### 5.2. "Dual Jobs" Claim

Plaintiffs contend that they worked in both a tipped and non-tipped capacity. Specifically, Plaintiffs were paid between $5.00 and $6.00 per hour for all hours worked. For some of their work time, they worked on the road, delivering food and earning tips. But for other times, Plaintiffs worked inside the store (*e.g.*, cooking pizza, folding boxes, cleaning dishes, etc.) working in the store, not generating tips. To the extent that Plaintiffs worked in two occupations (i.e., "dual jobs"), they are entitled to be paid at full minimum wage for any non-tipped work. 29 C.F.R. 531.56(e). Defendants, however, contend that Plaintiffs' in-store work was minimal and nonetheless so related to their tipped work as to be part of the same occupation. Thus, Defendants maintain their ability to pay a tipped wage rate for all of the work. The unpaid wages for this claim range, if proven, range from approximately $100,000 to $150,000 depending on how much time the drivers spent inside the store. From there, Plaintiffs sought the application of FLSA and Ohio Constitution damages.

### 5.3. Tip Credit Notice Violation Claim

Plaintiffs assert that Defendants improperly took a tip credit for hours worked while making deliveries by failing to pay the agreed upon wage rate by under-reimbursing Plaintiffs for delivery expenses.

Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act. [3] Here, Plaintiffs allege that Defendants have failed to

---

[3] (1) the amount of the cash wage that is to be paid to the tipped employee by the employer; (2) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; (3) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited

*actually pay* the wage rate they promised to pay, after accounting for kickbacks, and therefore cannot avail themselves of the tip credit even if they had properly informed Plaintiffs of it. *Meetz v. Wis. Hospitality Grp. LLC,* No. 16-cv-1313, 2017 WL 3736776, *5 (E.D. Wisc. Aug. 29, 2017) (explaining that an employer cannot retroactively claim a greater tip credit than they informed employees they would be claiming). The notice requirement is "strictly construed," and must be complied with even if the employee receives tips at least equivalent to minimum wage. *See, e.g., Chung v. New Silver Palace Restaurant, Inc.*, 246 F.Supp.2d 220, 229 (S.D.N.Y. Sept. 13, 2002). Maintaining that all drivers were appropriately compensated and reimbursed, Defendants, of course, disagree with Plaintiffs' tip credit claim in its entirety.

The value of this claim, if any, is predicated on the under-reimbursement claim. On one hand, if Defendants could prove the reimbursement rate covered all expenses, its value would be $0. On the other, if there is a valid under-reimbursement claim, its value could be significant.

### 5.4. Prompt Pay Act Claims

Plaintiff Mullins also asserts a claim under Ohio's Prompt Pay Act, O.R.C. § 4113.15. This claim essentially has two components—unpaid wages and liquidated damages.

The unpaid wages portion can "rise and fall" with an underlying wage violation (*i.e.*, like an FLSA violation). *See, e.g., Parks v. Cent. USA Wireless, LLC*, No. 1:17-cv-448, 2019 WL 4743648, *5 (S.D. Ohio Sept. 29, 2019). Because the damages for this claim mirror the unpaid wages for the above violations, the analysis is the same (obviously, Plaintiff may only recover unpaid wages once).

---

to employees who customarily and regularly receive tips; and (4)that the tip credit shall not apply to any employee who has not been informed of these requirements in this section. 29 C.F.R. § 531.59.

The liquidated damages portion, however, is only available when there is no dispute as to the underlying wages. O.R.C. § 4113.15(B). Here, there is arguably a dispute over whether the unpaid wages were due. If Plaintiff prevailed on this claim, the class could have been awarded an additional $1,100,000.

### 5.5. Other Considerations

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; (6) the objections, if any, raised by class members; and (7) the public interest. *Kritzer*, 2012 WL 1945144, at *6. Each factor is addressed below.

**Complexity, expense, and likely duration.** As the Court has recognized, wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018). This factor supports approving the proposed settlement.

**The stage of the proceedings and amount of discovery completed.** This case was actively litigated. Plaintiffs briefed conditional certification and were prepared to move for class certification on December 16, 2020 if mediation was unsuccessful. The parties completed substantial discovery that supports settlement of the claims raised in this case. Defendants produced payroll records relating to the delivery drivers' hours worked and wages paid, and records of the reimbursement payments made to delivery drivers. Defendants also produced to Plaintiffs sampling records of deliveries completed. Plaintiffs evaluated this data through excel

software designed to track miles driven and number of deliveries per run. The parties then worked together to reach a mutual agreement as to the best possible estimate of the number of miles driven by delivery drivers. This data formed the basis of the parties' settlement negotiations. In light of these factors, the parties are able to properly evaluate settlement at this stage.

**The judgment of experienced trial counsel.** Plaintiffs' counsel attests that, given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable. Plaintiffs' counsel are well-versed in delivery driver cases. *See Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, *5 (S.D. Ohio Jan. 18, 2019). Defendants' counsel are likewise experts in employment law.

**The nature of the negotiations.** The parties reached the above settlement only after substantial negotiations, which included a private full-day mediation with Stephen Callardo, a respected mediator in this District.

**Any objections from class members.** This factor will be evaluated at the final approval stage.

**The public interest.** The public interest generally favors settling class action litigation. This case is no different.

### 5.6. The payment of attorneys' fees is reasonable.

Class Counsel will apply for one third of the settlement fund as attorneys' fees ($300,000), plus litigation costs. Defendants have agreed not to object to this award, which is a standard amount in this type of case. *See, e.g.*, *Brandenburg*, 2019 WL 6310376, at *5 (An award of one-third "is a normal fee amount in a wage and hour case."). "One-third of the common fund

is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman v. Grube, Inc.*, No. 3:16-cv-802, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018); *see also Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").[4]

Further, the Settlement Agreement is not conditioned on an award of attorneys' fees. *See* Exhibit 1, ¶ 4(B). Thus, the Court does not need to decide the issue of attorneys' fees and costs now. In any case, Class Counsel will expend additional attorneys' fees during the notice process and approval process, which could affect the Court's evaluation of the final fee award. At the final fairness hearing, the Court will be in a position to grant final approval to the fee request after taking into account any objections to the fee.

### 5.7. The incentive payment is reasonable, and similar payments are routinely awarded.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation). Such compensation for time, effort, risk, and service does not improperly grant preferential treatment to class representatives.

---

[4] *See, e.g., In re Foundry Resins Antitrust Litig.,* No. 04-md-01639, Doc. 245 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 million dollar settlement); *In re Packaged Ice Antitrust Litig.*, Case No. No. 08-MDL-01952, 2011 WL 6209188, *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, Case No. 2:12-cv-83, 2014 WL 2946459, *1 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified.").

This case involves two Rule 23 classes—an Ohio Rule 23 class and a Kentucky Rule 23 class. The settlement agreement earmarks $10,000 to Plaintiff Mullins for his work in bringing and prosecuting the case on behalf of Ohio delivery drivers, and $5,000 to Plaintiff Rue for his work in bringing and prosecuting the case on behalf of Kentucky delivery driver. This amount is in line with amounts awarded in nearly identical cases.[5] Both Plaintiffs spent time and effort working with Class Counsel on this case. As in any case, Plaintiffs bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiffs' participation, this class settlement on behalf of more than 500 delivery drivers would not have occurred.

**6. For settlement purposes, the Court should certify a class action and a collective action.**

Courts throughout the country faced whether to certify a Rule 23 Class in the pizza delivery driver reimbursement context have granted class certification.[6] Likewise, Courts routinely certify FLSA collective actions in the delivery driver context.[7] Plaintiffs' case is no

---

[5] *See Arledge*, 2018 WL 5023950, *6; *Mullins*, 2019 WL 275711, *6; *Brandenburg*, 2019 WL 6310376, *7-8; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019); *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 WL 6498956, *7 (S.D. Ohio Nov. 5, 2020).

[6] *See, e.g., McFarlin v. The Word Enterprises, LLC*, No. 16-cv-12536, 2017 WL 4416451 (E.D. Mich. Oct. 5, 2017); *Brandenburg*, 2018 WL 5800594; *Bass v. PJ COMN Acq. Corp.*, No. 09-cv-01614, 2011 WL 2149602 (D. Colo. June 11, 2011); *Perrin v. Papa John's Int'l Inc.*, No. 4:09-cv-01335, 2013 WL 6885334 (E.D. Mo. Dec. 31, 2013); *Oregel v. PacPizza, LLC*, No. C12-01454, 2014 WL 10585672 (Sup. Ct. of Contra Costa Cnty. May 14, 2014); *Behain v. Pizza Hut, Inc.*, No. BC54145 (Sup. Ct. of L.A. Cnty. Jul. 15, 2015).

[7] *See, e.g., Bellaspica v. PJPA, LLC*, 3 F.Supp.3d 257 (E.D. Pa. 2014); *Thomas*, 2019 WL 4743637 (S.D. Ohio Sep. 29, 2019); *Sullivan v. PJ United, et al.*, No. 7:13-cv-01275, Dkt. 80 (N.D. Ala. Mar. 13, 2017); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2017 WL 3500411 (S.D. Ohio Aug. 15, 2017); *Waters v. Pizza to You, LLC*, 2020 WL 1129357 (S.D. Ohio Mar. 9, 2020); *Young v. Rolling in the Dough*, No. 1:17-cv-7825, 2018 WL 1240480 (N.D. Ill. Mar. 8, 2018); *Meetz v. Wis. Hospitality Grp. LLC*, No. 16-cv-1313, 2017 WL 3736776, *5 (E.D. Wisc. Aug. 29, 2017); *Redus v. CSPH, Inc.*, No. 3:15-cv-2364, 2017 WL 2079807 (N.D. Tex.); *Drollinger v. Network Global Logistics, Inc.*, No. 16-cv-00304, Dkt. 76 (D. Colo. Jan. 18, 2017); *Tegtmeier v. PJ Iowa, LC*, 208 F.Supp.3d 1012, *3-21 (S.D. Iowa Sept. 21, 2016); *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632, 2012 WL 1414325 (D. Colo. Apr. 21, 2012); *Darrow v. WKRP Mgmt. LLC*, No. 09-cv-01613, 2012 WL 638119 (D. Colo. Feb. 28, 2012); *Perrin v. Papa John's Int'l, Inc.*, No. 4:09-cv-1335, 2011 WL 4089251 (E.D. Mo. Sept. 14, 2011); *Wass v. NPC Int'l., Inc.*, No. 09-cv-2254, 2011 WL 1118774 (D. Kan. Mar. 28, 2011); *Bass v. PJCOMN Acq. Corp.*, No. 09-cv-01614, 2010 WL 3767132 (D. Colo. Sept. 15, 2010); *Luiken* 2010 WL 2545875; *Sullivan v. PJ United, Inc.*, AAA Case No. 30 20 1300 0597, at 3-10 (Clarke Sept. 23, 2015); *Linkovich v. Capital Pizza Huts, Inc.*, AAA Case No. 01-14-0001-6513, at 5-8 (Holstein Sept. 16, 2015)

different. For settlement purposes, Plaintiffs asks the Court to certify the following hybrid Rule 23/collective Classes:

> All current and former delivery drivers employed from March 16, 2017 to November 20, 2020 at all LaRosa's stores owned, operated, and/or controlled by Defendants in Ohio (the "Ohio Class").

> All current and former delivery drivers employed from March 16, 2015 to November 20, 2020 at all LaRosa's stores owned, operated, and/or controlled by Defendants in Kentucky (the "Kentucky Class").

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are common questions of law and fact common to the class; (3) the claims and defenses of the representative parties are typical to the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23 requires the Court to find that "questions of common law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

While the FLSA requires similarly-situated workers to affirmatively "opt in" before becoming a party plaintiff, Ohio and Kentucky law do not. *See* Ohio Const. Art. II, § 34a; O.R.C. § 4111.03; O.R.C. § 4111.10; K.R.S. § 337.325; K.R.S. § 337.385. Consequently, plaintiffs may maintain class actions for unpaid wages under Rule 23. *See, e.g., Castillo v. Morales, Inc.*, 302 F.R.D. 480, 489-90 (S.D. Ohio 2014) (certifying Ohio minimum wage class); *see also Whitlock v. FSL Mgmt., LLC*, No. 3:10-cv-00562, 2013 WL 5656100, *3-5 (W.D. Ky. Oct. 16, 2013) (upholding decision to certify Rule 23 class under K.R.S. § 337.325). Because the standard to

certify a collective action is easier to meet than the Rule 23 standard, satisfying the Rule 23 standard also meets the collective action standard. Therefore, certification of a collective action is also appropriate here.

### 6.1. Plaintiffs have satisfied the four Rule 23(a) prerequisites for class certification.

#### 6.1.1. Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. "Plaintiffs need not demonstrate that it would be impossible to join all of the putative class members; rather, they need simply show that joinder would be difficult or inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012).

During the relevant time period, hundreds of class members who were subject to the pay policies alleged in the First Amended Complaint were employed at the Defendants' stores. This easily meets the numerosity requirement.

#### 6.1.2. Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." Commonality exists "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Sweet v. Gen. Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976). Individual class members need not be identically situated to meet the commonality requirement. Rather, the "requirement is met where the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Swigart*, 288 F.R.D. at 183, *citing DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Moreover, commonality is not required on every question raised in a class action. Rather, Rule 23

is satisfied when the legal question linking the class members is substantially related to the litigation's resolution. *Id.*; *see also Bacon v. Honda of American Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (commonality not required when "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue").

Here, Plaintiffs maintain that the legal theories and relevant facts are common to the class because the class consists of workers that were allegedly harmed in the same way. Plaintiffs have identified the following common questions of law or fact presented by their claims: (1) how much Defendants reimbursed delivery drivers for their expenses, (2) whether Defendants adequately reimbursed delivery drivers for their delivery expenses, (3) the nature and extent of the drivers' in-store work, (4) whether Defendants paid time-and-a-half overtime wages, (5) whether Defendants can dispute whether they adequately compensated drivers, and (6) what damages and liquidated damages are available to the class members as a result of Defendants' practices. Outside of the settlement context—*i.e.*, when defendants dispute class certification—this Court has certified a rule 23 class for nearly identical claims. *See, e.g.,* Brandenburg, 2018 WL 5800594.

### 6.1.3. **Typicality**

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. "Typical does not mean identical, and the typicality requirement is liberally construed." *Swigart*, 288 F.R.D. at 185, *citing Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D.Ill. 1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*, *citing Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996). The requirement of typicality focuses on the conduct of a

defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *Id.*, *citing Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 491 (S.D.Ill. 1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)."). This is why a finding that commonality exists generally results in a finding that typicality also exists. *Violette v. P.A. Days, Inc.,* 214 F.R.D. 207, 214 (S.D. Ohio 2003). Typicality "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Swigart*, 288 F.R.D. at 185 (internal citations omitted). Where, as here, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Laichev v. JBM, Inc.,* 269 F.R.D. 633, 640-41 (S.D. Ohio 2008). Additionally, differences in the amount of damages allegedly owed each putative class member "is not fatal to a finding of typicality." *Id.* at 641.

Here, Plaintiffs are members of the putative class and their claims are typical of all class members' claims in that they all arise from the same courses of conduct. Plaintiffs maintain that each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. For example, the same or similar reimbursement rates applied to all class members (i.e., drivers were reimbursed between 6-7% of the purchase order price). Whether Defendants' pay practices are illegal is a question answerable on a class-wide basis. "The premise of the typicality requirement is simply stated: as goes the claims of the named plaintiff, so goes the claims of the class." *Id.* at 640. If Defendants' wage and hour practices violate Ohio and

Kentucky law as to each Plaintiff, they violate Ohio and Kentucky law as to the putative class members; and, accordingly, the typicality requirement is met here.

### 6.1.4. Adequacy of Representatives

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) Do the representatives have common interests with the unnamed members of the proposed class? (2) Will the representatives vigorously prosecute the interests of the class through qualified counsel? *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). These two requirements are met here.

With respect to the first inquiry, because Plaintiffs are challenging the same unlawful conduct and seeking the same relief as would the rest of the class members, Plaintiffs' interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. *See, e.g., Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994); *Thomas v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiffs' interests are essentially identical to all putative class members' interests.

With respect to the second inquiry, the proposed class representatives are ready, willing and able to fulfill their duties and have done so to date. Likewise, Plaintiffs' counsel is well-qualified to handle this matter. This case is one of many "delivery driver lawsuits" that Plaintiffs' counsel is litigating across the nation. Through those cases, counsel have litigated many of the key issues in these cases, including motions to dismiss, motions for summary judgment, and motions for class certification. [8] Thus, Plaintiffs' counsel is well-versed in this

---

[8] *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 1367663 (S.D. Ohio Mar. 26, 2019) (motion to dismiss); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043, *7 (S.D. Ohio Nov. 5, 2019) (motion for

area of law and the strengths and weaknesses of the claims at issue. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, *6 (S.D. Ohio Nov. 25, 2019) ("The Court is familiar with Class Counsel's work in this and other cases like it. The '[] delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…"). [9] Plaintiffs' counsel has actively and vigorously pursued Plaintiffs' (and the putative class members') claims in this case. Plaintiffs' counsel has committed, and will continue to commit, the resources necessary to representing the putative class in this case.

### 6.2. Plaintiffs has satisfied the Rule 23(b)(3) class certification requirements.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, both of Rule 23(b)(3)'s requirements are met in this case.

### 6.2.1. Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized

---

summary judgment on IRS mileage rate); *Thomas v. Papa John's Int'l, Inc.*, No. 1:17-cv-411, 2019 WL 4743637, (S.D. Ohio Sept. 29 2019) (contested motion for conditional certification); *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2019 WL 4601930 (S.D. Ohio Sept. 23, 2019) (motion to dismiss); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594 (S.D. Ohio Nov. 6, 2018) (contested motion for class certification).
[9] *See also Arp v. Hohla and Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 WL 6498956, *8 (S.D. Ohio Nov. 5, 2020) (stating, "[Plaintiffs' Counsel] are highly qualified and have substantial experience in federal court and class action litigation. Class Counsel has substantial experience in wage and hour litigation and "delivery driver" litigation" in particular.").

proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306, F.3d 1247, 1252 (2d Cir. 2002).

There are numerous common questions of law and fact arising out of Defendants' conduct, making this an appropriate case for resolution by means of a class action. Most notably, liability turns on what the proper reimbursement rate is for delivery drivers and whether Defendants paid that rate. These issues would be determined based on common proof, and common questions predominate in this case. *See, e.g., Swigart*, 288 F.R.D. at 186. As a result, this case is appropriate for class certification.

### 6.2.2.  A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. *See, e.g., Tedrow v. Cowles*, No. 2:06-cv-637, 2007 WL 2688276, *8 (S.D. Ohio 2007) (holding "[a]s Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers.").

18

Moreover, efficiency favors concentrating the claims in this Court, as there is no record of other, similar litigation pending in Ohio. A final resolution of Defendants' liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

   7. **The proposed notice conforms to federal law.**

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See generally* Exhibit 2, Notice of Settlement. The notice also informs putative class members that they may enter an appearance through counsel if the member so desires, that only those employees who file a claim form will participate in the settlement, and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A), and informs potential class members that they must file an attached claim form in order to receive payment from the settlement.

The Court should direct distribution of the class notice in the manner described in the settlement agreement. The settlement agreement envisions sending the Notice by regular mail and email.

8. **The Court should set a hearing for final approval.**

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 160 days after the Court grants preliminary approval of the proposed settlement. This date would allow a reasonable period for class notices to be mailed and for class members to submit claim forms, object to, or opt-out of the settlement, but would not unduly delay the case's adjudication. The timeline envisioned for administration is below:

| Time | Event |
|---|---|
| Within 14 days of preliminary approval | Defendants provide Class Counsel and the Administrator with the final list of class members, their contact information, and relevant wage and reimbursement data. |
| Within 14 days after receiving the class list | The Administrator will send the notice. |
| Within 60 days after mailing notices | Class members must either opt-out or object, if they choose either of those options. |
| Within 30 days of the notice period deadline | Plaintiffs will draft and file a motion for final approval. |
| Within 14 days of the Court's final approval Order | Defendants will provide $900,000 to the Claims Administrator to fund the QSF |
| Within 30 days of the Court's final approval Order | The Claims Administrator will distribute payments to Class Members and Class Counsel |

9. **Conclusion**

Plaintiffs ask the Court to enter an Order: (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsel's request for attorney's fees and costs; (3) approving Plaintiff's service award; (4) directing distribution of the Class Notice and Claim Form to class members to provide an opportunity to join this settlement, or opt-out or object to the settlement; and (5) setting the hearing date for the final approval of the settlement.

Respectfully submitted,

*/s/ Phil Krzeski*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs*

**<u>Certificate of Service</u>**

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

*/s/ Phil Krzeski*
Philip J. Krzeski