IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Paul Mullins and Tyler Rue, | |
| *On behalf of themselves and those similarly situated*, | Case No. 1:20-cv-214 |
| Plaintiff, | Judge Matthew W. McFarland |
| v. | |
| Data Management Co., *et al.*, | |
| Defendants. | |

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL

Plaintiffs ask that the Court grant final approval of the parties' Settlement Agreement, Doc. 41-1, order the parties to carry out the terms of the Settlement Agreement, and dismiss the case with prejudice. The Settlement Agreement resolves the collective and class-wide claims raised in this lawsuit. Defendants do not oppose this Motion.

Respectfully submitted,

/s/ Andrew Kimble
Andrew R. Biller (Ohio Bar #0081452)
Andrew P. Kimble (Ohio Bar #009372)
Philip J. Krzeski (Ohio Bar # 0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710

1

Facsimile: (614) 340-4620
abiller@billerkimble.com
akimble@billerkimble.com
pkrzeski@billerkimble.com
www.billerkimble.com

*Counsel for Plaintiff and the collective/class*

## Memorandum in Support of Plaintiffs' Unopposed Motion for Final Settlement Approval

### 1. Introduction and Case History

The parties have resolved this pizza delivery driver under-reimbursement lawsuit. On January 7, 2021, the Court preliminarily approved the parties' Settlement Agreement. *See* Doc. 42. Pursuant to the Court's Order, the parties have carried out the class action notice process contemplated in Settlement Agreement. The Notice process is now complete. None of the 668 LaRosa's delivery drivers who make up the class objected to or opted out of the Settlement. *See* Ex. 1, Declaration Andrew P. Kimble in Support of Motion for Final Settlement Approval, ¶ 8.

Plaintiffs now seek an order (1) granting final approval of the Settlement Agreement previously filed as Doc. 41-1 as fair, reasonable, and adequate; (2) certifying this case as a Rule 23 Class Action for settlement purposes; (3) approving the requested award of attorney's fees and costs; (4) approving the service award; (5) dismissing the action with prejudice; and (6) ordering the parties to carry out the remaining terms of the Settlement Agreement. Defendants do not oppose this request.

### 2. Case Background

On March 16, 2020, Plaintiff Paul Mullins filed this lawsuit on behalf of himself and similarly situated delivery drivers. The Complaint alleged that Defendants' 11 LaRosa's stores underpay their delivery drivers because (1) they pay at or close to minimum wage, (2) they require the drivers to provide a car to use at work, and (3) they do not properly or fully reimburse the drivers for their automobile expenses. Doc. 1. Plaintiff also alleged that Defendants failed to

properly claim a tip credit from the delivery drivers' wages and, alternatively, that Defendants improperly paid delivery drivers a sub-minimum "tipped wage rate" for hours worked in a non-tipped capacity. *Id.*

Shortly after the case was filed, on March 24, 2020, Plaintiff filed a Motion to Send Notice to Similarly Situated Employees. Doc. 4. Defendants opposed Plaintiff's Motion, which was fully briefed on May 21, 2020. Doc. 12, 17.

On July 29, 2020, the Court entered a Calendar Order and the parties commenced the discovery process.

On September 14, 2020, Plaintiff sought leave to file a First Amended Complaint to add an additional named Plaintiff, Tyler Rue, to add Rule 23 class allegations on behalf of Kentucky drivers, and to add additional Defendants as alleged employers. Doc. 29. The Court granted Plaintiff's request, and the First Amended Complaint was filed on October 13, 2020. Doc. 35. In its Order granting Plaintiff's Motion for Leave to File his First Amended Complaint, and in light of the new allegations and parties, the Court denied Plaintiff's Motion to Send Notice as moot. See Docket, Notation Order, Oct. 6, 2020.

On November 20, 2020, the parties attended a mediation with private mediator Stephen Calardo. During that mediation, the parties reached the Settlement Agreement that is currently before this Court.

On January 6, 2021, Plaintiffs filed their Unopposed Motion for Preliminary Settlement Approval. Doc. 41. The following day, on January 7, the Court preliminarily approved the settlement and instructed the parties to carry out its terms. Doc. 42. In its Order granting preliminary approval, the Court held that the "proposed settlement falls within the 'range of

4

reasonableness' and therefore grants preliminary approval of the settlement. Based on a review of the papers submitted by the parties, the Court finds that the settlement is the result of arms-length negotiations conducted after Class Counsel has adequately investigated the claims and became familiar with the strengths and weaknesses of those claims." *Id*. at Page ID 455.

The parties retained Atticus Administration, LLC to administer the settlement. On February 11, 2021, the Notice of Settlement was sent to 668 class members. *See* Ex. 1, ¶ 8. No class members opted out of or objected to the Settlement Agreement. Plaintiffs now ask the Court to grant final approval of the parties' settlement.

### 3. The drivers' claims.

Plaintiffs assert a claim on behalf of pizza delivery drivers that is ubiquitous in federal courts. First, Plaintiffs claim that Defendants under-reimbursed delivery drivers for the automobile expenses that drivers incurred in having to use their own cars to deliver food resulting in unpaid minimum and overtime wages. "Because the vehicles owned by the delivery drivers are considered 'tools of the trade,' 29 C.F.R. §531.35, and required by [defendants] as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878, at *11 (S.D. Ohio Nov. 6, 2018) ("*Brandenburg I*") (granting Rule 23 class certification to plaintiffs); *see also Waters v. Pizza to You, LLC*, ___ F.Supp.3d ___, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 87604, at *27 (S.D. Ohio May 7, 2021) (granting summary judgment to plaintiffs); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790, at *21 (S.D. Ohio Nov. 5, 2019) ("*Hatmaker I*") (granting summary judgment to plaintiffs). Because

Defendants paid the drivers at or below full minimum wage (*i.e.*, Defendants paid a tipped wage rate), any under-reimbursement triggers a clam for unpaid minimum wages under the FLSA and Ohio wage law. On the under-reimbursement claim, Plaintiff Mullins sought unpaid wages calculated as the difference between the IRS standard business mileage rate and the reimbursement actually paid for each mile driven, plus FLSA liquidated damages in the amount of 1× unpaid wages, plus Ohio Constitution, Article II, Section 34a damages in the amount of 2× unpaid wages on behalf of the Ohio class. On behalf of the putative Kentucky class, Plaintiff Rue sought unpaid wages, FLSA liquidated damages, and damages under the Kentucky Wage and Hour Act in the amount of 1× unpaid wages.

Second, Plaintiffs claim that Defendants violated the requirements for claiming a tip credit as required by 29 U.S.C. § 203(m), and therefore were not permitted to claim a tip credit for the hours the drivers worked on the road making deliveries. Specifically, Defendants claimed a tip credit for a certain amount per hour as an offset to their minimum wage obligation. But, as a result of their failure to adequately reimburse the delivery drivers, Defendants effectively paid the drivers less than tipped wage rate they promised the drivers, thus failing to meet one of the criteria for properly claiming a tip credit. "When an employer fails to actually pay the cash wage that they informed their tipped employees that they would pay, the employer fails to meet the requirements for taking a tip credit." *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *4 (S.D. Ohio May 17, 2021) (citations omitted); *see also, e.g., McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 246 (4th Cir. 2016) (holding that failure to pay tip credit wage rate triggers tip credit violation); *Ornelas v. Los Arrieros*, 232 F.Supp.3d 962, 970 (N.D. Ohio Jan. 9, 2017) (holding that Defendants' failure to pay tip credit wage rate rendered them ineligible for tip

credit under Ohio law). On this claim, Plaintiff Mullins sought the "tip credit differential"—*i.e.*, the difference between full minimum wage and the tipped wage rate paid—for all hours worked on the road by Defendants' delivery drivers, plus FLSA liquidated damages at 1× unpaid wages and Ohio Constitution damages at 2× unpaid wages on behalf of the Ohio class. On behalf of the putative Kentucky class, Plaintiff Rue sought the tip credit differential, FLSA liquidated damages, and damages under the Kentucky Wage and Hour Act in the amount of 1× unpaid wages.

Third, in the alternative to their tip credit notice claim, Plaintiffs contend that they worked in both a tipped and non-tipped capacity but were paid a tipped wage rate for all hours worked. For some of their work time, they worked on the road, delivering food and earning tips. But for other times, Plaintiffs worked inside the store (*e.g.*, cooking pizza, folding boxes, cleaning dishes, etc.) working in the store, not generating tips. To the extent that Plaintiffs worked in two occupations (i.e., "dual jobs"), they are entitled to be paid at full minimum wage for any non-tipped work. 29 C.F.R. 531.56(e). On this claim, Plaintiff Mullins sought the tip credit differential for all hours worked inside the store in a non-tipped capacity, plus FLSA liquidated damages at 1× unpaid wages and Ohio Constitution damages at 2× unpaid wages on behalf of the Ohio class. Plaintiff Rue sought the tip credit differential for all hours worked inside the store in a non-tipped capacity, plus FLSA liquidated damages at 1× unpaid wages and Kentucky damages 1× unpaid wages on behalf of the Kentucky class.

Fourth, Plaintiff Mullins brings a claim for additional, liquidated damages under Ohio's Prompt Pay Act Claim on behalf of the Ohio class. Plaintiff's Prompt Pay Act claim can be contingent on an underlying wage and hour violation. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016). Still, for Plaintiff to prevail on the liquidated damages claim (as

opposed to just repayment of unpaid wages alone), he needs to show that there is no dispute regarding the underlying unpaid wages. O.R.C. 4113.15(B).

Fifth, Plaintiff Mullins asserted a claim under R.C. § 2307.60 for civil liability for a criminal act on behalf of the Ohio class. *See, e.g.*, *Buddenberg v. Weisdack*, 2020-Ohio-3833, ¶¶11–22. Under subsection (A) of the statute, Defendants may also be subject to punitive damages.

Sixth, Plaintiff Rue asserted a claim for failure to pay agreed upon wages under K.R.S. 337.060 on behalf of the Kentucky class. Plaintiff Rue sought unpaid wages, liquidated damages in the amount of 1× unpaid wages, and 10% of unpaid wages.

Finally, Plaintiffs Mullins and Rue brought claims for unjust enrichment, under Ohio and Kentucky law, respectively, on behalf of both classes, seeking restitution of the benefit conferred on Defendants by the delivery drivers.

Defendants deny Plaintiffs' allegations, and instead argue that they may reasonably approximate the expenses associated with employees' business use of their personal vehicles. *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721 (E.D. Mo. July 8, 2015) (citing 29 C.F.R. § 778.217). Thus, Defendants claim that they have properly reimbursed the delivery drivers and paid all amounts and wages due. Defendants also deny that the wage rates they paid were improper. Finally, Defendants deny that Plaintiffs' claims are proper for class or collective action treatment, but have stipulated to the same solely for purposes of settlement.

## 4.  Summary of Settlement Terms

The settlement agreement creates a settlement fund of $900,000, inclusive of attorney's fees, expenses, and service awards. *See* Doc. 41-1. Under the terms of the Agreement, each Ohio Class Member who worked for Defendants at any time between March 16, 2017 and November

20, 2020 and each Kentucky Class Member who worked for Defendants at any time between October 13, 2015 to November 20, 2020 will receive a share of the settlement fund.

After subtracting fees, expenses, and service awards, the remaining settlement fund will be distributed to the Class Members based on their *pro rata* share of the remaining settlement fund. Doc. 41-1, ¶ 3(C)(ii). The *pro rata* share will be determined as follows: First, for purposes of the *pro rata* split, Ohio Class Members' hours will be calculated at 1.5× their actual number of hours to account for the greater possible damages under the Ohio Constitution, Article II, Section 34a. After that, the settlement fund is broken down into the wage portion of the settlement and the reimbursement portion of the settlement. $100,000 is allocated to the wage portion of the settlement, with each Class Member receiving a pro rata share of that amount based on their hours. The reimbursement portion of the settlement will be determined by reference to each Class Members' Reimbursement Shares, which will be calculated by subtracting the average reimbursement rate used at each store from $.55 per mile to determine the average under-reimbursement per store, then multiplying that average under-reimbursement by the number of hours worked by each Class Member at each store.

Based on the data provided by Defendants during the litigation and after preliminary approval, Defendants' reimbursement rates ranged from $.35 per mile to $.65 per mile, depending on the store location. If the litigation continued, Defendants would have argued that these rates were sufficient to comply with the FLSA and state wage and hour laws. Under the settlement, the Class Members, on average, will receive $860.78. In light of these circumstances, the settlement is an excellent result for the class members.

**5. Notice Process**

After the Court entered preliminary approval, the parties retained claims administrator Atticus Administrator, LLC (the "Administrator") to distribute the Notice of Settlement to the 668 class members. *See* Ex. 2, Declaration of Christopher Longley on Notice and Settlement Administration, ¶¶ 4-7. The Notice Period lasted from February 11, 2021 to April 12, 2021. *Id.* Notice was sent by first class mail. The settlement agreement contemplated the Notice also being sent by email, to the extent email addresses were available, but Defendants were not able to provide email addresses. As such, the Notice was sent by First Class mail only. When mailings were returned as undeliverable, the Administrator made efforts to obtain new addresses for class members by performing skip tracing searches. Out of the 668 notices, only 27 (4%) of the notices remained undelivered as of the close of the notice period, which is a good result under the circumstances. *See* Ex. 2; *Arp,* 2020 U.S. Dist. LEXIS 207512, at *11. None of the class members have opted out or objected to the settlement. *See* Ex. 1, ¶¶ 15-16. This notice process meets the requirements stated in Rule 23(c)(2).

**6. Standard for Settlement Approval**

The Sixth Circuit also adheres to the "federal policy favoring settlement of class actions." *Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *see also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1268, 1372 (6th Cir. 1976) ("Public Policy strongly favors settlement of disputes without litigation."). Class settlements conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991); *In re Microstrategy, Inc., Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 589, 594–95 (3d

10

Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements "in class actions…where substantial judicial resources can be conserved by avoiding formal litigation"); Newberg §§ 11.41 ("The compromise of complex litigation can be encouraged by the courts and favored by public policy.").

### 6.1. Standard for Rule 23 Class Settlements.

Courts use a three-step procedure for approving class settlements. *McConnell,* 2021 U.S. Dist. LEXIS 92836, at *9. At the first step, the Court determines whether to preliminarily approve the settlement. *Id*. Next, notice is issued to potential Class Members. *Id*. Finally, the Court must decide whether to finalize approval after holding a hearing. *Id* Rule 23(e)(2) provides that the Court may approve the settlement if it is fair, adequate, and reasonable. In evaluating this question, courts in the Southern District of Ohio have considered:

1. Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;
2. The complexity, expense and likely duration of the litigation;
3. The stage of the proceedings and the amount of discovery completed;
4. The judgment of experienced trial counsel;
5. The nature of the negotiations;
6. The objections, if any, raised by the class members; and
7. The public interest.

*See, e.g., Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 U.S. Dist. LEXIS 74994, *19-20 (S.D. Ohio May 30, 2012).

### 6.2. Standard for Wage and Hour Settlements.

Likewise, in evaluating an FLSA settlement and an Ohio wage and hour settlement, the Court's role "is comparable to that of a court in a settlement of class action…" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, *18, *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010

11

U.S. Dist. LEXIS 20446, *12 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is (1) the product of a bona fide dispute; (2) fair, reasonable, and adequate; and (3) reached through arms-length negotiation. *Id.* As described below, the proposed settlement meets this standard.

**6.3. The parties' settlement meets the standard for approval.**

Plaintiff detailed in his Motion for Preliminary Approval why the parties' settlement meets all of these factors. Doc. 41, PageID 408-13. Plaintiffs incorporate those arguments herein. The only factor Plaintiffs were unable to address at the preliminary approval stage were the objections raised by absent class members. Now that the notice period is complete, Plaintiffs can address this factor—none of the 668 class members opted out or objected to the settlement. *See* Ex. 2, ¶ 8. As such, this final factor, like all of the others, weighs in favor of settlement approval. Because all factors favor approval, the Court should grant final approval. The Settlement Agreement resolves contested legal claims and provides a substantial benefit to the Class Members.

**7. Certification of Settlement Class is appropriate.**

In their Motion for Preliminary Approval, Plaintiffs explained why Rule 23 class and FLSA collective certification are appropriate. *See* Doc. 41, PageID 415-23. Defendants consent to class/collective action certification for settlement purposes. *Id.* Plaintiffs incorporates their arguments from the Motion for Preliminary Approval for why certification of a Rule 23 Settlement Class is appropriate. *Id.*

**8. The payment of attorney's fees and costs is reasonable.**

In the Court's Order granting preliminary approval, the Court held that "[t]he attorney's fees and costs requested are provisionally approved. The fees and costs will be approved after the

final hearing occurs, taking into account any objections." Doc. 42, Page ID 457. Thus far, no class member has objected to the settlement or the award of attorneys' fees.

Class counsel seeks an attorneys' fee award of 1/3 of the settlement fund, or $300,000, plus reimbursement of $3,686.09 in advanced litigation expenses. "District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Rules 54(d)(2) and 23(h)." *Arp,* 2020 U.S. Dist. LEXIS 207512, at *15. In addition, the FLSA and the Ohio Constitution provide the right to attorneys' fees for a party who recovers unpaid wages. 29 U.S.C. § 216(b); Oh. Const., Art. II, Section 34a.

When assessing the reasonableness of a fee petition in a class action, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

### 8.1. The Court should adopt the percentage approach.

First, the Court must decide if it will award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. "This flexible approach allows the Court to account for the unique and varied circumstances present in each class action." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *16.

The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Id.*, *quoting Hebert v. Chesapeake Operating, Inc.*, 2019 U.S. Dist. LEXIS 160792, at *11 (S.D. Ohio Sept. 20, 2019), *and Swigart v. Fifth Third Bank*, 2014 U.S.

13

Dist. LEXIS 94450, at *14-15 (S.D. Ohio July 11, 2014). It is, therefore, the "preferred method in

this district." *Id*. "Absent compelling reasons to the contrary," courts in the Southern District of

Ohio prefer the percentage method in wage and hour cases, "as it best reflects FLSA's employee-

protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS

32459, at *16 (S.D. Ohio Feb. 16, 2021).[1] "[T]he percentage approach encourages efficiency,

judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc.*

*Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work

more hours, without regard to the quality of the output or the class's needs, the percentage

approach instead 'rewards counsel for success and penalizes it for failure.'" *Id*.

Here, the Court should adopt the percentage of the fund approach and award class counsel

1/3 of the settlement fund in attorneys' fees. An award of one-third "is a normal fee amount in a

wage and hour case." *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *14-15; *see also, e.g.*,

*McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836 (S.D. Ohio May 17,

2021); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *15-16 (awarding one-third, noting "no reason in

this case to deviate from the norm"); *Osman v. Grube, Inc.*, No. 3:16-cv-802, 2018 U.S. Dist. LEXIS

78222, at *6 (N.D. Ohio May 4, 2018)( "One-third of the common fund is a reasonable attorneys'

fee award 'and has been approved in similar FLSA collective actions in this judicial district.'");

---

[1] In wage and hour cases, the "compelling circumstances" that give rise to application of the lodestar method usually involve a situation where a plaintiff or a class of plaintiffs' damages are relatively small, but they have suffered damages nonetheless. In such a circumstance, counsel is often required to expend substantial attorney time—sometimes accruing fees many times greater than the value of the case—in order to help workers recover their wages. It is essential to the proper functioning of the FLSA and associated state laws that lawyers who undertake these cases be compensated for these important efforts. This is the type of "compelling circumstance" that augers in favor of applying a lodestar method in a wage and hour class/collective action settlement. *See Arp*, 2020 U.S. Dist. LEXIS 207512, n. 1; *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir.2021) (reversing and remanding fee award limited to a percentage of recovery in wage case).

*Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 U.S. Dist. LEXIS 228221, *10-11 (N.D. Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").[2]

This case presents a good example of why the percentage method is preferred in this district. Plaintiffs aggressively advanced this case based largely on class counsel's expertise from and work in other pizza delivery driver cases. As a result of their expertise, class counsel did not "churn" hours, but instead worked efficiently to prepare this case for conditional certification, class certification, and summary judgment. This advocacy has resulted in a substantial benefit to the class. While the lodestar method could potentially punish class counsel for their efficient and aggressive approach, the percentage method rewards class counsel, as it should.

### 8.2.    The *Ramey* Factors.

Next, the Court must analyze the six *Ramey* factors to ensure the attorneys' fee award is reasonable: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the

---

[2] *See, e.g.*, *In re Foundry Resins Antitrust Litig.*, No. 04-md-01639, Doc. 245 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1  million dollar settlement); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, No. 2:12-cv-83, 2014 U.S. Dist. LEXIS 91661, at *4 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.*, Case No. 4:00-cv-00435-RH-WCS, Docs. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g.*, *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386, 2018 U.S. Dist. LEXIS 179474, at *11 (S.D. Ohio Oct. 17, 2018). There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, No. 1:13-cv-341, 2018 U.S. Dist. LEXIS 139769, at *7 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fee.

First, the settlement results in a substantial benefit to the class. *After* deducting the requested attorneys' fees, litigation costs, administrative costs, and incentive award, the class members who do not opt out will be paid an average of $860.78 for each mile they drove while completing deliveries for Defendants' LaRosa's Pizza stores. Kimble Decl. at ¶ 12. This is an excellent result considering there was a chance the drivers could have lost altogether. *Compare Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth,* 2010 U.S. Dist. LEXIS 20446, *20 (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average."). This factor supports the requested fee award.

16

Second, there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and "the societal benefit is particularly acute in wage and hour cases brought on behalf of minimum wage workers." *Arp*, 2020 U.S. Dist. LEXIS 207512, *17-18. "The attorneys who take on class action cases enable this." *Id.*, *citing Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, *26-27 (S.D. Ohio June 30, 2017). Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted). This factor supports the requested fee award.

Third, class counsel's services were provided on a contingency fee basis. Kimble Decl. at ¶ 17. This factor supports the requested fee award.

Fourth, while a lodestar cross-check is not required, it supports the requested attorneys' fees award. Class counsel has worked 330.1 hours on this case thus far, for a total lodestar to date of $109,720.00. This results in an average hourly rate of $332.38. Class counsel's hourly rates are reasonable. *See McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19 (approving hourly rates for Andy Biller at $600 per hour; Andrew Kimble at $550 per hour; Phil Krzeski at $350 per hour; and Erica Blankenship for $350 per hour); *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *17; *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19.

Class counsel's work will continue after final approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19.

In addition to the hours class counsel has worked on this particular pizza delivery driver case, Biller & Kimble, LLC has worked thousands of hours on pizza delivery driver cases and other types of wage and hour cases throughout the country in recent years. As Judge Susan Dlott held in

17

another pizza delivery driver case, Class Counsel has "established an expertise in 'pizza delivery driver' litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019); *see also Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, 2019 WL 6310376, at *6 (discussing Biller & Kimble's expertise in this area). These hours "directly benefited the class in this case." *Arp*, 2020 U.S. Dist. LEXIS 207512, at 20. "A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fees." *Id.* at *21. "It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work other cases raising the same or similar issues." *Id*. Here, Class Counsel used this experience to quickly and efficiently achieve a valuable settlement for the class members.

As such, the lodestar multiplier of 2.75 is also reasonable. *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19-20 (approving lodestar multiplier of 2.9); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19 (approving lodestar multiplier of 5.29). "[G]iven the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *20. "This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate." *Id*.

18

Fifth, as discussed throughout this Motion, wage and hour class/collective actions are "inherently complex." *Arledge,* 2018 U.S. Dist. LEXIS 179474, at *5. This factor supports approval of the requested fee award.

Sixth, both the class and Defendants are represented by skilled and experienced counsel. Class counsel has substantial experience in pizza delivery driver litigation. Kimble Decl., ¶¶ 21-35. Defendants' counsel, Jeff Mando, a Partner at Adams Law PLLC, is likewise a highly experienced employment lawyer and litigator. This factor supports the requested fee award.

Since all of the *Ramey* factors support the requested fee award, Plaintiff requests the Court award class counsel 1/3 of the settlement fund as attorneys' fees.

### 8.1.  Class Counsel's request for reimbursement of advanced litigation expenses and the administration expenses should be approved.

Class counsel also seeks reimbursement of advanced litigation expenses. Class counsel incurred $3,686.09 in advanced litigation costs in pursuit of this case. These costs relate primarily to the filing fee, mediation fees, and deposition costs. Kimble Decl., ¶ 22. These costs are reasonable and should be awarded to class counsel out of the settlement fund.

In addition, the Settlement Agreement contemplates that the costs of claims administration will be deducted from the settlement fund before individual awards are distributed. The Administrator has sent the Notices of Settlement, will calculate the settlement awards, and will distribute the individual settlement payments. The Administrator estimates their costs will be $13,490. Ex. 2, ¶ 9. This expense is reasonable and should be award out of the settlement fund.

### 9.  The incentive payment to Plaintiffs should be approved.

19

In its order granting preliminary approval, the Court "approved the service award, absent any objections at the Final Fairness Hearing." Doc 42, Page ID 457. The settlement agreement earmarks funds from the settlement amount to compensate Plaintiff: $10,000 for Paul Mullins and $5,000 for Tyler Rue. These amounts are in line with incentive payments awarded in nearly identical cases. *See Arledge*, 2018 U.S. Dist. LEXIS 179474, *16-17; *Mullins v. Southern Ohio Pizza*, No. 1:17-cv-146, 2019 U.S. Dist. LEXIS 11019, *16-17 (S.D. Ohio Jan. 18, 2019); *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *21-22; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019); *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *22; *Arp*, 2020 U.S. Dist. LEXIS 207512, *24. Plaintiff Mullins filed this case while employed with Defendants and provided substantial information to his counsel to substantiate his claims pre-suit. Because of his efforts, 668 delivery drivers will receive unpaid wages. Likewise, Tyler Rue's efforts ensured that each of the Kentucky delivery drivers would share in the settlement. Plaintiffs worked with their counsel at every step of the way, including ultimately deciding to agree to the proposed settlement. Plaintiffs ask the Court to approve the service fee award of $10,000 to Plaintiff Mullins and $5,000 to Plaintiff Rue.

## 10. Conclusion

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for Motion for Final Settlement Approval and for an Award of Attorney's Fees and Expenses.

Respectfully submitted,

/s/ Andrew Kimble
Andrew R. Biller (Ohio Bar #0081452)

20

Andrew P. Kimble (Ohio Bar #009372)
Philip J. Krzeski (Ohio Bar #0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
abiller@billerkimble.com
akimble@billerkimble.com
pkrzeski@billerkimble.com
www.billerkimble.com

*Counsel for Plaintiff and the collective/class*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Defendants.

/s/Andrew Kimble
Andrew Kimble