IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Paul Mullins and Tyler Rue, *On behalf of themselves and those similarly situated*, Plaintiffs, v. Data Management Co., *et al.*, Defendants. | Case No. 1:20-cv-214 Judge Matthew W. McFarland |

ORDER GRANTING FINAL SETTLEMENT APPROVAL

Before the Court is Plaintiffs' Unopposed Motion for Final Settlement Approval. The Court, having reviewed Plaintiffs' Motion and considered the arguments made during the Final Approval Hearing, hereby **GRANTS** Plaintiffs' Motion.

**1. Background**

This is a wage and hour lawsuit brought on behalf of a class of pizza delivery drivers who worked at the LaRosa's Pizza stores owned and operated by Defendants Data Management Co.; Pasta Inc.; David & Daoud Inc.; Pizza Pie LLC; Lanlar, Inc.; Fresh Start, LLC; 3TTT Corporation; Tarik David Enterprises, Inc; Pesto LLC; Paste Inc.; Tarik Daoud; Jordan Daoud; Sameer David; Ziad Ghobar; Chase Daoud; Mossa David; and Madia David. *See* First Amended Complaint, Doc. 35. Plaintiff Mullins originally filed this case on March 16, 2020. *Id*.

Plaintiffs' primary claim in this lawsuit is that Defendants paid delivery drivers at or close to minimum wage and, at the same time, required delivery drivers to pay for their own delivery

1

expenses like vehicle maintenance, insurance, vehicle wear and tear, etc., but failed to sufficiently reimburse the drivers for these costs. Plaintiffs maintain that employers must reimburse their employees for these costs. *See, e.g.,* 29 C.F.R. § 531.35; *Waters v. Pizza*, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 87604, at *5 (S.D. Ohio May 7, 2021) ("In the pizza delivery context, the cost associated with delivering food for an employer is a 'kickback' to the employer unless it is fully reimbursed, lest a minimum wage violation be triggered."). Plaintiffs maintain, and a number of courts in this district have held, that employers of minimum wage delivery drivers must either (1) track and reimburse actual expenses or (2) reimburse at the IRS standard business mileage rate. *Waters*, 2021 U.S. Dist. LEXIS 87604, at *27 (granting summary judgment to plaintiff delivery drivers); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146-TMR, 2019 WL 5725043, *7 (S.D. Ohio Nov. 5, 2019) (same); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878, at *11 (S.D. Ohio Nov. 6, 2018) ("*Brandenburg I*") (granting Rule 23 class certification to plaintiffs). In addition to the claim for unreimbursed expenses, Plaintiffs also claim that Defendants improperly claimed a tip credit from the delivery drivers' wages for all hours worked, including hours worked in a non-tipped capacity. Doc. 35. Plaintiffs claim Defendants were therefore not entitled to claim a tip credit from the delivery drivers' wages. 29 C.F.R. § 531.59(b); 29 C.F.R. § 531.56 (e). Plaintiffs claim Defendants' practices violate the FLSA (Counts 1 & 2); the Ohio Constitution, Article II, Section 34a (Count 3); the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.11 (Count 5); the Ohio Prompt Pay Act, O.R.C. § 4113.15 (Count 6); K.R.S. § 337.275 (Count 4); K.R.S. § 337.060 (Count 7); O.R.C. § 2307.60 (Count 8); and unjust enrichment under Ohio and Kentucky law (Counts 9 & 10).

Defendants claim that they are not required to reimburse at the IRS rate or reimburse actual expenses, but instead may reasonably approximate the expenses associated with employees' business use of their personal vehicles, have adequately reimbursed the delivery drivers for all of their expenses, and have at all times paid them properly. *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721 (E.D. Mo. July 8, 2015) (citing 29 C.F.R. § 778.217). Thus, Defendants claim that they have properly reimbursed the delivery drivers and paid all amounts and wages due. Defendants also deny that the wage rates they paid were improper. Finally, Defendants deny that Plaintiffs' claims are proper for class or collective action treatment, but have stipulated to the same solely for purposes of settlement.

On March 24, 2020, Plaintiff Paul Mullins filed a Motion to Send Notice to Similarly Situated Employees. Doc. 4. Defendants opposed Plaintiff's Motion, which was fully briefed on May 21, 2020. Doc. 12, 17. On July 29, 2020, the Court entered a Calendar Order and the parties commenced the discovery process. On September 14, 2020, Plaintiff sought leave to file a First Amended Complaint to add an additional named Plaintiff, Tyler Rue, to add Rule 23 class allegations on behalf of Kentucky drivers, and to add additional Defendants as alleged employers. Doc. 29. The Court granted Plaintiff's request, and the First Amended Complaint was filed on October 13, 2020. Doc. 35. In its Order granting Plaintiff's Motion for Leave to File his First Amended Complaint, and in light of the new allegations and parties being included in the case through the First Amended Complaint, the Court denied Plaintiff's Motion to Send Notice as moot. *See* Docket, Notation Order, Oct. 6, 2020.

Shortly after the discovery period began, after the parties had exchanged information regarding the scope of Defendants' operations and the potential damages suffered by class members, the parties attended mediation with private mediator Stephen Calardo. The parties held

the mediation on November 20, 2020. Shortly thereafter, the parties reached terms on the Settlement Agreement now before this Court. Declaration of Andrew Kimble in support of Motion for Final Settlement Approval, ¶ 7.

On January 6, 2021, the parties sought preliminary approval of the Settlement Agreement currently before this Court on January 6, 2021. Doc. 41. On January 7, the Court preliminarily approved the settlement. Doc. 42. In its Order granting preliminary approval, the Court held that the "proposed settlement falls within the 'range of reasonableness' and therefore grants preliminary approval of the settlement. Based on a review of the papers submitted by the parties, the Court finds that the settlement is the result of arms-length negotiations conducted after Class Counsel has adequately investigated the claims and became familiar with the strengths and weaknesses of those claims." *Id*. The Court ordered the parties to carry out the settlement's terms.

Pursuant to the Court's Order, on February 11, 2021, a Notice of Settlement was sent to 668 class members by First Class Mail, notifying the class members of the terms of the settlement and informing them about their options to opt out of or object to the settlement. No class members opted out of or objected to the Settlement Agreement.

**2. The Settlement Agreement**

The parties' Settlement Agreement creates a Settlement Fund of $900,000. After deduction of attorneys' fees, advanced expenses, administrative costs, and service awards, the Settlement Fund will be distributed to delivery drivers employed at the following LaRosa's Pizza stores: Crescent Springs, Kentucky; Edgewood, Kentucky; Florence, Kentucky; Hebron, Kentucky; Mt. Zion, Kentucky; Lakota, Ohio; Landen, Ohio; Liberty Township, Ohio; Loveland, Ohio; Mason, Ohio; and Middletown, Ohio. Settlement Agreement, Doc. 41-1, ¶ 1(B). The claims asserted on behalf of the Kentucky drivers will cover worked performed from October 13, 2015 to November

4

20, 2020. *Id*. The claims asserted on behalf of the Ohio drivers will cover worked performed from March 16, 2017 to November 20, 2020. *Id*. Unless they affirmatively opt out, each class member will receive a check for their share of the settlement.

Under the parties' Settlement Agreement, the funds will be distributed to the class members on a *pro rata* basis. Settlement Agreement, ¶ 3. First, to account for the fact that the Ohio class members have a claim for additional damages under Ohio Constitution, Article II, Section 34a that is potentially greater than the Kentucky class members' claims, each Ohio Class Members' hours worked will be counted at 1.5×. *Id*. at ¶ 3(C)(ii)(a). After that, $100,000 is to be shared among the entire class on a pro rata basis based on their number of hours worked to account for Plaintiffs' dual jobs and tip credit notice claims. *Id*. at ¶ 3(C)(ii)(b). After the wage portion of the settlement is distributed, the remainder of the Settlement Fund will be distributed on a pro rata basis among the class members, accounting for the average reimbursement rate paid at each location, such that if an employee worked at a store with a lower average reimbursement rate they will receive a larger share of the settlement fund. On average, each class member will receive $860.78.

By cashing their checks, the class members agree to the following release of claims:

> By cashing or negotiating this check, I agree to join the lawsuit *Mullins v. Data Management Co.* case number 1:20-cv-214 (the "Lawsuit") and agree to be bound to the Settlement and Release Agreement in the Lawsuit. I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Defendants or any of the Released Parties (as defined by the Settlement and Release Agreement) for the wage and hour claims that were asserted in the Lawsuit relating to under-reimbursement of delivery expenses, tip credit notice, "dual jobs" claims, and unpaid overtime claims, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and under the federal Fair Labor Standards Act and parallel state and local wage and hour laws, including Ohio and Kentucky law.

Settlement Agreement, ¶ 5(E).

5

The Settlement Agreement also allows any class member who does not timely cash his/her check to request the Claims Administrator reissue his or her check at any time until November 20, 2023. Settlement Agreement, ¶ 3(E). To the extent any uncashed awards remain in the Fund as of November 20, 2023, those funds will be distributed to the class members who did cash their checks provided that the remaining funds are sufficient for each class member to receive, on average, after deducting for the costs of administration, at least $10. *Id.* at ¶ 3(E)(iv). The Court retains continuing jurisdiction over the Action to enforce, interpret, and otherwise implement the settlement.

Pursuant to the terms of the Settlement Agreement, the parties hired a Claims Administrator to distribute the Notice of Settlement. Notice was sent to 668 class members. Of those, 544 were putative FLSA Subclass members who were required to return a claim form to be part of the FLSA Subclass, and 133 individuals returned their claim form. The Rule 23 class is made up of 813 individuals, all but one of whom will recover under the terms of the Settlement Agreement. Defendants also complied with the Class Action Fairness Act ("CAFA") by sending notices to the appropriate government officials.

The Settlement Agreement provides for payment of attorneys' fees in the amount of 1/3 of the Settlement Fund, reimbursement of litigation expenses, administrative costs, and service awards to Plaintiff Mullins for $10,000 and Plaintiff Rue for $5,000. Settlement Agreement, ¶¶ 3(H); 4(A) and (C).

### 3. Analysis

#### a. Class Certification is Appropriate for Settlement Purposes.

The Court hereby certifies the following two hybrid class/collectives for settlement purposes:

> All current and former delivery drivers employed from March 16, 2017 to November 20, 2020 at all LaRosa's stores owned, operated, and/or controlled by Defendants in Ohio. (the "Ohio Class")
>
> All current and former delivery drivers employed from October 13, 2015 to November 20, 2020 at all LaRosa's stores owned, operated, and/or controlled by Defendants in Kentucky. (the "Kentucky Class")

The classes meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b) (3) for purposes of settlement.[1] *See, e.g., Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *2 (S.D. Ohio Jan. 18, 2019) (approving a Rule 23 settlement class of Domino's drivers asserting similar claims); *Howard v. Southern Ohio Pizza, Inc.*, No. 1:19-cv-222, Doc. 38 (S.D. Ohio Aug. 20, 2020); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, *6 (S.D. Ohio Nov. 25, 2019) ("*Brandenburg II*"); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *4 (S.D. Ohio May 17, 2021); *Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *15 (S.D. Ohio Nov. 5, 2020).

Federal Rule of Civil Procedure 23(a)(1) is satisfied because there are 668 class members, and thus, joinder is impracticable. Doc. 43-2, Declaration of Christopher Longley on Notice and Settlement Administration, ¶ 4-5.

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(2) because Plaintiffs and the class members share common issues of fact and law. Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." A single common question is sufficient to certify a class. *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Plaintiffs allege that Defendants' reimbursement policy harmed all of the class members in the same way.

---

[1] The Court acknowledges that Defendants agreed to class certification pursuant to Rule 23 and collective action certification pursuant to Section 216(b) for settlement purposes only.

For the same reason, Plaintiffs satisfy the typicality requirement in Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of the class members claims.

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that they have interests antagonistic to or at odds with those of Class Members. *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.3d 1026, 1031 (6th Cir. 1977).

Plaintiffs also satisfy Federal Rule of Civil Procedure 23(b)(3). Class members' common factual allegations and legal theory—that Defendants under-reimbursed the delivery drivers, and claimed an improper tip credit from delivery drivers' wages—predominate over any factual or legal variations among class members.

The Court appoints Biller & Kimble, LLC as class counsel because they meet all of the requirements of Rule 23(g). Plaintiff's Counsel are well-versed in pizza delivery driver litigation. Referring to Biller & Kimble, LLC's lawyers, Judge Walter H. Rice held "[t]he Court is familiar with Class Counsel's work in this and other cases like it. * * * The Court agrees that Class Counsel's work in this area is exemplary…" *Brandenburg II,* 2019 WL 6310376, *6.

Finally, the Court finds that the Class Notice process undertaken by the Claims Administrator met the requirements of Rule 23(e)(1), and the government notices provided met the requirements of CAFA. Doc. 43-2.

The Court also finds that the case is properly certified as a collective action pursuant to Section 216(b) of the FLSA.

The Court **GRANTS** certification of a Rule 23 and FLSA Section 216(b) settlement class of Defendants' delivery drivers employed from March 16, 2017 to November 20, 2020, at the LaRosa's Franchise stores owned, operated, and/or controlled by Defendants.

### b. The parties' settlement is fair, reasonable, and adequate.

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. FED. R. CIV. P. 23(e); *Mullins*, 2019 WL 275711, *2. There is an "especially strong" presumption in favor of voluntary settlements "in class actions…where substantial judicial resources can be conserved by avoiding formal litigation." *Ehrheart v. Verizon Wireless,* 609 F.3d 589, 594-95 (3d Cir. 2010); *see also* Newberg §§ 11.41 ("The compromise of complex litigation can be encouraged by the courts and favored by public policy.").

Courts in the Sixth Circuit evaluate the following factors in determining whether to approve a class action settlement: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Mullins*, 2019 WL 275711, *2 (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

#### i. The Risk of Fraud or Collusion

First, the evidence before the Court clearly reflects that the Settlement Agreement is the product of arms-length negotiations conducted by experienced counsel on both sides, including an all-day mediation. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Mullins*, 2019 WL 275711, *2 (quoting *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008)). Nothing before the Court suggests that the Settlement is the result of fraud or collusion.

### ii.  The Complexity, Expense, and Likely Duration

Second, "[w]age and hour class and collective actions, such as this, are inherently complex and time-consuming." *McConnell,* 2021 U.S. Dist. LEXIS 92836, at *11; *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 WL 5023950, *5 (S.D. Ohio Oct. 17, 2018) (concluding a case raising a similar delivery driver reimbursement claim "involved complicated issues of fact and law."). Defendants dispute liability and raise a number of defenses. The parties would have had to proceed through class certification, summary judgment, and possibly a trial before a judgment would be entered. The settlement amount is not the full amount that the delivery drivers could have received at trial, but the settlement eliminates the possibility that the delivery drivers might receive nothing at trial. Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Hupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969). This factor supports approval of the settlement.

### iii.  The Amount of Discovery Engaged in by the Parties

"In under-reimbursement delivery driver cases, discovery focuses 'mainly on the records Defendants are required to keep under the FLSA and Ohio law.'" *McConnell,* 2021 U.S. Dist. LEXIS 92836, at *11 (quoting *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2020 U.S. Dist. LEXIS 39715, 2020 WL 1129325, at *3 (S.D. Ohio Mar. 6, 2020)). Here, the parties exchanged sufficient mileage, reimbursement, hours, and wage information for them to evaluate the claims and defenses in this case. Plaintiffs also conducted a Rule 30(b)(6) deposition to gather information about Defendants' operations which informed their evaluation of the case. The Court is satisfied that both parties were fully informed as to the strengths and weaknesses of their respective positions and that settlement is appropriate in that situation.

### iv. The Likelihood of Success on the Merits

Success was not certain for the delivery drivers on either their under-reimbursement claim or their tip credit notice/dual jobs claims. There were a number of factual and legal disputes that would have to be decided by the Court. Depending on the Court's decisions, the delivery drivers could have been awarded more or less than what they will receive under the terms of the settlement. This factor supports approval of the settlement.

### v. The Opinions of Class Counsel and Class Representatives

The class representatives approve of the settlement. Class Counsel also believes the settlement is fair, adequate, and reasonable. Counsel are uniquely experienced in pizza delivery driver litigation, having litigated similar cases across the country. This factor supports approval of the settlement.

### vi. The Reaction of Absent Class Members

The class members reaction to the settlement has been positive. The class members have now been notified of the settlement. None of the 668 class members of objected or opted out.

### vii. The Public Interest

Public policy favors settlement of class action lawsuits. *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *4 (S.D. Ohio July 11, 2014). This case is no exception. The settlement provides relief to the class members, avoids further litigation in a complex case, and frees the Court's judicial resources. Accordingly, the Court finds that this factor weighs in favor of approving the proposed Settlement because the public interest is served by resolution of this action.

All of these factors support approval of the settlement. The Court therefore **APPROVES** the parties' Settlement Agreement as fair, adequate, and reasonable.

11

### c. Fees, Expenses, and Service Awards

Plaintiffs' Counsel asks the Court to approve an attorneys' fees award of one-third of the Settlement Fund, *i.e.*, $300,000, and reimbursement of advanced litigation costs in the amount of $3,686.09. Defendants do not object to the requested fee or expense reimbursement award. In granting preliminary approval, the Court provisionally approved Plaintiffs' Counsel's request for fees and costs, and explained that the fees and costs would be finally approved after taking into account any objections. Doc. 42, ¶ 8. The Notice period is closed, and no class members objected to the settlement or the requested fees and costs.

The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Herbert v. Chesapeake Operating, Inc.*, 2019 U.S. Dist. LEXIS 160792, 2019 WL 4574509, at *4 (S.D. Ohio Sept. 20, 2019), *quoting Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, 2014 WL 3447947, at *5-6 (S.D. Ohio July 11, 2014). "'Absent compelling reasons to the contrary,' courts apply the percentage method in wage and hour cases, 'as it best reflects FLSA's employee-protection objective.'" *McConnell*, 2021 U.S. Dist. LEXIS 92836, *15, *quoting Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS 32459, at *16 (S.D. Ohio Feb. 16, 2021). "The percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.* As such, absent compelling reasons to the contrary, the percentage method is "preferred." *Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *3 (S.D. Ohio Nov. 5, 2020).

Many courts in the Sixth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund is reasonable. *See, e.g., Brandenburg II,* 2019 WL 6310376, *6; *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *21; *Arp*, 2020 U.S. Dist. LEXIS 207512, at *22; *Osman v. Grube, Inc.*, No. 3:16-cv-802, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018); *Thorn v. Bob Evans Farm*, No. 2:12-cv-00768, 2016 WL 8140448, at *2 (S.D. Ohio Feb. 26, 2016) (awarding 32.92% of common fund); *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *8 (N.D. Ohio Sept. 20, 2019) (stating "33% is typical for attorney's fees in common fund, FLSA collective actions in this District…").

To ensure a fee is reasonable, the Court also analyzed the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Here, all *Ramey* factors support approval of the attorneys' fee request.

First, counsel's work resulted in a significant benefit to the class. The class members will receive, on average, $860.78 each. To receive this money, class members do not need to take any action other than cash a check that will be mailed to them. The Court finds that this is an excellent result that supports the proposed fee award. *See, e.g., McConnell*, 2021 U.S.Dist. LEXIS 92836, *18.

Second, there is a benefit to society when claimants with smaller claims may pool their claims and resources. "The societal benefit is particularly acute in wage and hour cases brought on behalf of minimum workers." *Id*. "In order for attorneys to take on these cases, which, in the class and collective action setting, are complex and difficult cases, attorneys must be fully compensated for their work Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *Id*.

Third, counsel litigated this matter on a wholly-contingent basis with no guarantee of recovery. See Kimble Declaration, ¶ 17.

Fourth, a lodestar cross-check supports counsel's attorneys' fee request. Class counsel has incurred 330.1 hours for a total lodestar of approximately $109,000. Further, "class counsel's work does not end at final approval." *McConnell*, 2021 U.S. Dist. LEXIS 92836, *19. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *Id*. Further, counsel's representation here was informed by thousands of hours of work they have performed in other, similar pizza delivery driver cases. Class Counsel has "established an expertise in 'pizza delivery driver' litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019); *see also Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, 2019 WL 6310376, at *6 (discussing Biller & Kimble's expertise in this area). These hours "directly benefited the class in this case." *Arp*, 2020 U.S. Dist. LEXIS 207512, at 20. "A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fees." *Id*. at *21. "It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work other cases raising the same or similar issues." *Id*. In light of the foregoing, counsel's lodestar multiplier of approximately 2.75 is reasonable.

Fifth, as discussed herein, wage and hour actions are inherently complex, which supports the proposed fee award.

Sixth, both the class and Defendants have been represented by skilled and experienced counsel. This factor supports approval of the requested attorneys' fee.

14

The Court finds this request for attorneys' fees to be fair, adequate, and reasonable, and therefore **GRANTS** Plaintiffs' Counsel's request for attorneys' fees in the amount of $300,000.

The Court also **GRANTS** Plaintiffs' Counsel's request for reimbursement of litigation costs in the amount of $3,686.09 and **APPROVES** the claims administration costs of $13,490 as fair, adequate, and reasonable.

### i. Service Award

The Court also approves the request for a service award in the amount of $10,000 to Paul Mullins and $5,000 to Tyler Rue. The class representatives will sign a separate general release as consideration for these service award payments. Plaintiffs have provided valuable insight to their Counsel throughout the case, and their efforts resulted in payment to nearly 668 minimum wage pizza delivery drivers. The requested service award is reasonable. *See, e.g., Mullins*, 2019 WL 275711, *6 (approving $10,000 service award in pizza delivery driver case); *Arledge*, 2018 WL 5023950, *6 (approving $10,000 service award in pizza delivery driver case); *Brandenburg II*, 2019 WL 6310376, *7 (approving $10,000 service award in pizza delivery driver case); *Young*, 2020 WL 969616, *7 (same); *Chrismon*, 2020 WL 3790866, *5 (same); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *24 (same); *McConnell*, 2021 U.S. Dist. LEXIS 92836, *22 (same). Accordingly, the Court **GRANTS** Plaintiffs' requests for service awards.

### 4. Conclusion

Having reviewed Plaintiffs' unopposed motion for final approval, the Court **GRANTS** the motion.

This action is hereby **DISMISSED** with prejudice, with the Court to retain jurisdiction to to enforce, interpret, and otherwise implement the settlement. The Parties are ordered to carry out the Settlement Agreement according to its terms.

**IT IS SO ORDERED**, this 21st day of June, 2021.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND